IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JENNIFER GARCIA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAMBIA HEALTH SOLUTIONS, INC. d/b/a CAMBIA HEALTH SOLUTIONS; and DOES 1-20, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANT'S NOTICE OF REMOVAL** |

PLEASE TAKE NOTICE that Defendant Cambia Health Solutions, Inc. d/b/a Cambia Health Solutions ("Cambia Health" or "Defendant") hereby removes the state court action captioned *Jennifer Garcia v. Cambia Health Solutions, Inc. d/b/a Cambia Health Solutions*, Case No. 26-2-04367-1 KNT (the "State Court Proceeding"), from the Superior Court of the State of Washington for the County of King to the United States District Court for the Western District of Washington. This Notice of Removal is filed pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. In support of its removal of this action, Defendant states as follows:

1. On or about February 2, 2026, Plaintiff Jennifer Garcia ("Plaintiff") filed the State Court Proceeding in the King County Superior Court against Defendant. In accordance with 28 U.S.C. § 1446(a), a true and correct copy of Plaintiff's state court complaint (the "Complaint") is attached hereto, along with a complete copy of all process, pleadings, orders, and other records served or filed in the State Court Proceeding.





STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

2. On February 13, 2026, Defendant was served with the Summons and Complaint filed by Plaintiff, through its registered agent for service of process. Declaration of Jere Hall in Support of Notice of Removal ("Hall Decl."), ¶ 2.

3. Plaintiff purports to allege, on behalf of herself individually, and on behalf of a putative class of individuals, that Defendant committed unlawful compensation practices in violation of Washington State law. *See* Complaint, ¶ 1.

4. Defendant strenuously denies the allegations in the Complaint and that it owes anything by the Complaint to Plaintiff or the putative class of individuals she purports to represent but treats the allegations of the Complaint as true for purposes of this Notice of Removal only.

5. The deadline for Defendant to remove this action has not expired since receipt by Defendant of the Summons and Complaint. Defendant has not voluntarily invoked or submitted to the jurisdiction of the King County Superior Court of the State of Washington in any manner.

**REMOVAL OF THIS ACTION IS APPROPRIATE UNDER 28 U.S.C. § 1332(d)**

6. Under 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act of 2005 ("CAFA") vests federal courts with original diversity jurisdiction over a class action "if: (1) the aggregate amount in controversy exceeds $5,000,000, and (2) any class member is a citizen of a state different from any defendant." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007). "[U]nder CAFA, complete diversity is not required; 'minimal diversity' suffices." *Id.* (citation omitted). As relevant here, "CAFA applies to 'class action' lawsuits where the aggregate number of members of all proposed plaintiff classes is 100 or more persons and where the primary defendants are not 'States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief.'" *Id.* at 1020 (quoting 28 U.S.C. § 1332(d)(5)). A "class action" is defined by CAFA as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure





STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Defendant's removal of the lawsuit to this Court is proper because each of these requirements is satisfied, as detailed below. 28 U.S.C. §§ 1453, 1446; *see Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (recognizing that "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court . . . [and] intended CAFA to be interpreted expansively").

**A. <u>Proposed Class Members</u>**

7. 28 U.S.C. § 1332(d)(5)(B) provides that CAFA does not apply to any class action where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." This requirement for removal under CAFA is met in this case.

8. Plaintiff seeks to represent a class consisting of "[a]ll current and former hourly-paid employees who worked for any one or more of the Defendants at any location in Washington State at any time from three years prior to the filing of the Complaint through the date of the Court's order certifying the Class." Complaint, ¶ 7. While the precise number of individuals in the putative class has not been ascertained, relying on Plaintiff's definition, even one year during the putative class period would exceed the 100-person requirement under CAFA. *See* Hall Decl., ¶ 3.

**B. <u>Identity of Defendant Entity</u>**

9. Under 28 U.S.C. § 1332(d)(5)(A), CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."

10. Cambia Health is not a state, state official, or other governmental entity. Cambia Health, an Oregon not-for-profit corporation, is a private business entity. Hall Decl., ¶ 4.

**C. <u>Minimal Diversity of Citizenship</u>**

11. CAFA's minimal diversity requirement is satisfied when "any member of a class



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A), 1453(a); *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1276 (9th Cir. 2017) (citing 28 U.S.C. § 1332(d)(2)(A)). For removal purposes under CAFA, diversity must exist at the time of removal. *See Faulk v. JELD-WEN, Inc.*, 159 F.4th 618, 622 (9th Cir. 2025). Minimal diversity of citizenship exists here, because Plaintiff and Defendant are not citizens of the same state.

12. Plaintiff is a citizen of the State of Washington. Complaint, ¶ 4.

13. Cambia Health is not a citizen of the State of Washington. A corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The Supreme Court of the United States established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181 (2010). There, the Supreme Court concluded that the "principal place of business" is "where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Id.* at 80. The Court clarified that the principal place of business can also be where the corporation "maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Id.* at 93.

14. Cambia Health is incorporated in Oregon. Hall Decl., ¶ 5. Cambia Health's principal place of business is in Portland, Oregon, where it maintains its headquarters. *Id.*

15. The named Plaintiff is a citizen of a state different from Cambia Health. Thus, minimal diversity exists for purposes of CAFA jurisdiction. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1453.

### D. <u>Amount in Controversy</u>

16. CAFA requires that the amount in controversy exceed $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5 million. 28 U.S.C. § 1332(d)(6).



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

17. An action may be removed if the defendant establishes, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional amount. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88, 135 S. Ct. 547, 190 L. Ed. 2d 495 (2014). In *Dart Cherokee Basin*, the U.S. Supreme Court recognized that "as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89. Only if the plaintiff contests, or the court questions the allegations of the notice of removal, is supporting evidence required. *Id.* There is "no antiremoval presumption" in CAFA, "which Congress enacted to facilitate adjudication of certain class actions in federal court." *Id.* "[T]he defendant's amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id.* at 87.

18. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "In that sense, the amount in controversy reflects the maximum recovery the plaintiff could reasonably recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (citing *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018)).

19. As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction).

20. "District Courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when 'those assumptions are reasonable in light of the



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

allegations in the complaint.'" *Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) (quoting *Altamirano v. Shaw Indus., Inc.*, No. C–13–0939 EMC, 2013 WL 2950600, at *6 (N.D. Cal. June 14, 2013)) (collecting and citing cases).

21. A removing defendant is not required to introduce evidence supporting the alleged violation rate. *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025). This is because a removing defendant likely believes the true violation rate is zero and, therefore, the evidence would not exist. *Id.* "For that reason, a CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint." *Id.* The district court's role, then, is "simply to determine if the defendant's 'reasoning and underlying assumptions are reasonable.'" *Id.* (quoting *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022)).

22. A plaintiff cannot defeat a removing defendant's assertion that the amount in controversy exceeds the $5 million threshold merely by suggesting that it is equally possible damages might be less than the requisite amount. *Id.* at 810; *see also Jauregui*, 28 F.4th at 995 ("Instead of attempting to determine which assumption would best calculate the amount in controversy . . . we concluded that the amount in controversy would be met using any of the plausible figures."); *Perez*, 131 F.4th at 809–10 (vacating remand order because the district court failed to consider whether the defendant's assumed violation rate was a reasonable interpretation of the complaint's allegations that the defendant committed violations "at times," instead erroneously concluding that the defendant was required to support its violation rate with actual evidence).

23. "[T]he amount in controversy is not limited to damages incurred prior to removal . . . . Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez*, 888 F.3d at 414–15 (9th Cir. 2018). Assessing a defendant's ultimate liability is an inquiry for trial, not for determining jurisdiction. *See Arias*, 936 F.3d at 927 ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective





STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

assessment of defendant's liability." (quoting *Lewis*, 627 F.3d at 400)).

24. Courts in this circuit have specifically held that a 50–70% violation rate is reasonable to adopt when a plaintiff pleads an ambiguous frequency of alleged violations. *See Washington v. Kerry Inc.*, No. 2:25-CV-00965-TL, 2025 WL 3089015, at *8 (W.D. Wash. Nov. 5, 2025) (finding a 27% violation rate would be "far too low," opting to rely on a 57% violation rate instead where the complaint alleged a "common course" of violations); *Oda v. Gucci Am., Inc.*, No. 2:14-cv-7468-SVW (JPRx), 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding a 50% violation rate appropriate where the complaint alleged the defendant maintained a "policy or practice" of not paying proper compensation for missed meal and rest breaks); Order Denying Motion to Remand, *Ramirez v. SGL Carbon Fibers America LLC*, No. 2:25-cv-00360-SAB, at *5 (E.D. Wash. Dec. 15, 2025) (denying remand and finding a 70% violation rate appropriate where the plaintiff alleged a "common course" of violations); Order Denying Plaintiff's Motion to Remand, *Waldrop v. Basic American, Inc.*, No. 2:25-cv-00382-MKD, 2025 WL 3680319, at *3–4 (E.D. Wash. Dec. 18, 2025) (denying remand and finding both a 50% and 100% violation rate would be reasonable where the plaintiff alleged a "common course" of violations).

25. Defendant denies the validity and merit of the entirety of Plaintiff's alleged claims, the legal theories upon which they are based, and the alleged claims for monetary and other relief that flow therefrom. Plaintiff brings three causes of action against Defendant. For purposes of removal only, and without conceding that Plaintiff or the putative class are entitled to any damages or penalties whatsoever, Defendant can easily demonstrate that Plaintiff's claims exceed the amount of $5 million in controversy as implicated by the class-wide allegations in this case. All calculations supporting the amount in controversy are based on the Complaint's allegations and the accompanying declaration of Jere Hall, assuming, without any admission, the truth of the facts alleged and assuming liability is established.

26. Plaintiff purports to bring the State Court Proceeding as a class action and seeks



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

class certification on behalf of a class that includes Plaintiff and all hourly-paid employees who worked for Defendant in Washington at any time in the last three years through final resolution of this action. Complaint, ¶ 7.

27. Plaintiff's First Cause of Action alleges that Defendant violated chapter 49.12 RCW and WAC 296-126-092 by allegedly failing to provide Plaintiff and the putative class with rest and meal breaks owed under Washington law. Complaint, ¶¶ 37–46.

28. Plaintiff's Second Cause of Action alleges that Defendant violated RCW 49.46.090 by allegedly failing to pay Plaintiff and the putative class all wages to which they were owed. Complaint, ¶¶ 47–54.

29. Plaintiff's Third Cause of Action alleges that Defendant violated RCW 49.46.130 by allegedly failing to pay Plaintiff and the putative class overtime wages at rates not less than 1.5 times their regular rate for all hours worked over 40 in a workweek. Complaint, ¶¶ 55–60.

30. On behalf of herself and the putative class, Plaintiff seeks double damages pursuant to RCW 49.52.070 for each of her three causes of action. Complaint, ¶¶ 46, 54, 60, Prayer for Relief at C.

31. Employees working shifts longer than five hours are entitled to a 30-minute meal period, beginning no less than two hours and no more than five hours from the start of their shift. WAC 296-126-092(1). Employees who are deprived of the right to have the respite of a 30-minute meal period are entitled to an additional 30 minutes of pay per violation. *Androckitis v. Virginia Mason Med. Ctr.*, 32 Wn. App. 2d 418, 444–45, 556 P.3d 714, 729–30 (2024), *rev. denied*, 4 Wn.3d 1007 (2025). Employees must also be allowed a rest period of at least 10 minutes for each four hours of working time and must be compensated for all rest periods. WAC 296-126-092(4). Employees who are deprived of the right to take a 10-minute rest period are entitled to an additional 10 minutes of pay per violation. *Wingert v. Yellow Freight Sys., Inc.*, 146 Wn.2d 841, 848–49, 50 P.3d 256, 260 (2002).

32. Employees are entitled to overtime compensation at a rate not less than 1.5 times





STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

the employee's regular rate of pay for all hours worked over 40 in a workweek. RCW 49.46.130(1).

33. An employer who willfully withholds wages that an employee is legally entitled to will be liable for twice the amount of the wages unlawfully withheld. RCW 49.52.050(2), 49.52.070.

34. From February 2023 to February 2024, Cambia Health had, on average, approximately 904 hourly employees in Washington. Hall Decl., ¶ 3. From February 2024 to February 2025, Cambia Health had, on average, approximately 937 hourly employees in Washington. *Id.* From February 2025 to February 2026, Cambia Health had, on average, approximately 890 hourly employees in Washington. *Id.*

35. During the class period as defined by Plaintiff, the majority of Defendant's hourly employees worked standard 40-hour weeks, consisting of five 8-hour shifts.[1] Hall Decl., ¶ 6.

36. From February 2023 to February 2024, hourly employees in Washington made, on average, approximately $25.60 per hour. Hall Decl., ¶ 7. From February 2024 to February 2025, hourly employees in Washington made, on average, approximately $27.13 per hour. *Id.* From February 2025 to February 2026, hourly employees in Washington made, on average, approximately $28.55 per hour. *Id.*

37. Assuming, for purposes of removal only, that Plaintiff and all putative class members did not receive compliant meal and rest periods at times during the class period as they allege, the value of the alleged violations would be $11,841,606.

38. To calculate missed compensation for 40-hour workweeks from February 2023 to February 2024 (five 8-hour shifts): 2.5 hours of weekly unpaid meal periods x 2, representing the additional 30-minute penalty for missed meal periods + 1.67 hours, representing the 10-minute penalty for each non-compliant rest period x $25.60 per hour = $170.75 in missed compensation

[1] Under Washington law, an employee working five 8-hour shifts per week would be entitled to five meal periods (2.5 hours) and ten rest periods (1.67 hours).



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

per employee per week.

39. From February 2023 to February 2024: 904 employees x $170.75 in weekly missed compensation x 48 weeks = $7,409,184 annual missed compensation, at a 100% violation rate.

40. To calculate missed compensation for 40-hour workweeks from February 2024 to February 2025 (five 8-hour shifts): 2.5 hours of weekly unpaid meal periods x 2, representing the additional 30-minute penalty for missed meal periods + 1.67 hours, representing the 10-minute penalty for each non-compliant rest period x $27.13 per hour = $180.96 in missed compensation per employee per week.

41. From February 2024 to February 2025: 937 employees x $180.96 in weekly missed compensation x 48 weeks = $8,138,857 annual missed compensation, at a 100% violation rate.

42. To calculate missed compensation for 40-hour workweeks from February 2025 to February 2026 (five 8-hour shifts): 2.5 hours of weekly unpaid meal periods x 2, representing the additional 30-minute penalty for missed meal periods + 1.67 hours, representing the 10-minute penalty for each non-compliant rest period x $28.55 per hour = $190.43 in missed compensation per employee per week.

43. From February 2025 to February 2026: 890 employees x $190.43 in weekly missed compensation x 48 weeks = $8,135,170 annual missed compensation, at a 100% violation rate.

44. Therefore, at a 100% violation rate, the value of the alleged meal and rest break violations spanning the last three years would be $23,683,211 ($7,409,184 from February 2023–24 + $8,138,857 from February 2024–25 + $8,135,170 from February 2025–26).

45. Plaintiff has not pled a specific frequency of alleged meal and rest break violations, instead vaguely pleading that Defendant "routinely failed to provide compliant meal and rest periods" and that employees "often" missed or worked through their breaks, Complaint, ¶ 21. Therefore, Defendant conservatively assumes a 50% violation rate for purposes of calculating the amount in controversy. *See* ¶ 24 *supra*.

46. Assuming a 50% violation rate, the value of the alleged violations spanning the



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

last three years would be $11,841,606. This figure is limited to Plaintiff's claims as related to non-compliant meal and rest breaks, conservatively estimates that none of Defendant's hourly employees worked over 40 hours in a single workweek during the putative class period, and does not include attorneys' fees. Plaintiff seeks attorneys' fees and costs for all three of her claims. Complaint, ¶¶ 46, 54, 60.

47. Plaintiff also seeks double damages under RCW 49.52.070 for all three of her claims. Complaint, ¶¶ 46, 54, 60, Prayer for Relief at C. Assuming the truth of the Complaint's allegations, for purposes of removal only, the value of the alleged meal and rest period violations would be $23,683,211 ($11,841,606 x 2), well beyond the $5 million threshold.

48. It is well established that in determining whether a complaint meets the amount in controversy requirement, the court should consider attorneys' fees. *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 64 S. Ct. 5, 88 L. Ed. 15 (1943); *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (attorneys' fees may be taken into account to determine jurisdiction amounts). The Ninth Circuit has held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018). "The type of evidence that courts have considered to estimate reasonable future attorney's fees include a percentage of economic damages alleged, fee awards in similar cases, and estimates of the number of hours that will likely be required to litigate the pending case multiplied by the opposing counsel's hourly rate." *Peck v. First Student, Inc.*, No. 3:17-cv-0863-SI, 2017 WL 3288116, at *3 (D. Or. Aug. 2, 2017).

49. When including attorneys' fees within the amount in controversy for jurisdictional purposes, courts in this circuit consistently use the 25% benchmark rate. *See Ramos v. Schenker, Inc.*, No. 5:18-cv-01551-JLS-KK, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) (finding that "'when including attorneys' fees within the amount-in-controversy for jurisdictional purposes, courts in this circuit consistently use the 25% benchmark rate,' especially





STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

in wage and hour class actions" and concluding that "the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction" (brackets and citation omitted)); *Heejin Lim v. Helio, LLC*, No. CV 11-9183 PSG (PLAx), 2012 WL 359304, at *3 (C.D. Cal. Feb. 2, 2012) ("[T]he Court notes that Plaintiff seeks attorney's fees, which are properly included in the amount in controversy at 25% of the potential damage award."); *Jasso v. Money Mart Express, Inc.*, No. 11-cv-5500 YGR, 2012 WL 699465, at *7 (N.D. Cal. Mar. 1, 2012) (noting it was "not unreasonable" for defendant to rely on attorneys' fees comprised of 25% of potential damages when calculating the amount in controversy).

50. Here, using the benchmark of 25% on Plaintiff's potential recovery on her meal and rest period claims, Plaintiff's attorneys' fees themselves would exceed the required amount in controversy—the fees would be at least $5,920,803. Adding $5,920,803 to the minimum $23,683,211 in controversy for the missed meal and rest period claims results in a minimum total amount in controversy of $29,604,014. Based on all the foregoing, Plaintiff's putative class claims clearly place in controversy more than $5 million.

## ALL OTHER REQUIREMENTS FOR REMOVAL ARE SATISFIED

51. Venue lies in the United States District Court for the Western District of Washington. This action was originally brought in the King County Superior Court, which is located within the Western District of Washington. Therefore, the action is properly removed to this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

52. Plaintiff filed her Complaint in the King County Superior Court on February 2, 2026. Defendant first learned of this lawsuit when it was served with the Summons and Complaint on February 13, 2026. Defendant is filing this Notice of Removal within 30 days of that date, and this Notice is therefore timely under 28 U.S.C. § 1446.

53. Defendant is filing this Notice of Removal on behalf of and with the consent of all known defendants in this action.



STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

54. As required by 28 U.S.C. § 1446(d), a copy of this Notice of Removal will be filed with the King County Superior Court, attached to a pleading entitled "Notice to Plaintiff of Defendant's Removal to Federal Court."

55. As further required by 28 U.S.C. § 1446(d) and as affirmed in the attached Certificate of Service, Defendant will serve Plaintiff with this Notice of Removal and with its Notice to Plaintiff of Defendant's Removal to Federal Court.

## CONCLUSION

WHEREFORE, Defendant respectfully seeks removal of the above-captioned action from the King County Superior Court to the United States District Court for the Western District of Washington. Defendant reserves, and does not waive, any objections it may have to jurisdiction, venue, and any and all other defenses or objections to this action.

DATED: March 16, 2026

STOEL RIVES LLP

*s/ Adam S. Belzberg*
Adam S. Belzberg, WSBA No. 41022
adam.belzberg@stoel.com

*s/ Aaron R. Doyer*
Aaron R. Doyer, WSBA No. 60095
aaron.doyer@stoel.com

*s/ Emily L. Seibold*
Emily L. Seibold, WSBA No. 62988
emily.seibold@stoel.com

600 University Street, Suite 3600
Seattle, WA 98101
Telephone: 206.624.0900
Facsimile: 206.386.7500

*Attorneys for Defendant Cambia Health Solutions, Inc.*

**CERTIFICATE OF SERVICE**

I, Debbie Dern, certify that I am a Practice Assistant of the law firm Stoel Rives LLP, a resident of the state of Washington, over the age of 18 years, not a party to these proceedings or interested herein, and am competent to serve as a witness herein. My business address is that of Stoel Rives LLP, 600 University Street, Suite 3600, Seattle, WA 98101.

On March 16, 2026, I caused a true and correct copy of the foregoing document to be served upon the following counsel of record as below:

| | | |
|---|---|---|
| Brandon Brouillette, WSBA No. 64353<br>Zachary M. Crosner, WSBA No. 61644<br>CROSNER LEGAL, P.C.<br>92 Lenora Street, #179<br>Seattle, Washington 98121<br><br>*Attorneys for Plaintiff Jennifer Garcia* | ☑<br>☐<br>☑ | Via USPS First Class Mail<br>Via legal messenger<br>via email<br>bbrouillette@crosnerlegal.com<br>zach@crosnerlegal.com |

DATED at Seattle, Washington, this 16th day of March 2026.

*s/ Debbie Dern*
Debbie Dern, Legal Practice Assistant
Stoel Rives LLP